## COMMONWEALTH *vs.* FITCHBURG RAILROAD COMPANY.

An indictment to recover a penalty imposed by statute need not negative the existence of circumstances which, under a proviso contained in the statute, would exonerate the defendant from liability.

This court cannot rule as a matter of law that a verdict should be set aside, the finding of which depends not only upon the finding of the jury upon several distinct facts, but also upon inferences to be drawn from them, if upon each of these facts there is sufficient evidence to make it a proper matter to be submitted to the jury.

INDICTMENT under Gen. Sts. *c.* 63, § 98, against a railroad corporation for running over and killing Benjamin F. Hapgood, through the gross carelessness of their servants. The indictment contained no averment that Hapgood was not upon the railroad contrary to law or the reasonable rules and regulations of the corporation;[*] and the defendants moved to quash the indictment for this reason, but the motion was overruled.

At the trial in the superior court, before *Morton,* J., evidence was introduced, which, so far as is now material, is stated in the opinion, and which the defendants contended was insufficient to show due care upon the part of Hapgood, or gross negligence upon the part of their servants, and they requested the court so to rule; but the case was submitted to the jury, who returned a verdict of guilty. The defendants alleged exceptions.

*J. Q. A. Griffin & G. M. Brooks,* for the defendants, cited *Meesel* v. *Lynn & Boston Railroad,* 8 Allen, 234, and cases cited; *Warren* v. *Fitchburg Railroad,* Ib. 227, and cases cited; *Denny* v. *Williams,* 5 Allen, 1, and cases cited.

*Reed,* A. G., for the Commonwealth.

---

[*] Gen. Sts. *c.* 63, § 98, impose a penalty upon a railroad corporation, to be recovered by indictment, if by reason of its negligence or carelessness, or the unfitness or gross negligence or carelessness of its servants or agents while engaged in its business, the life of any person, being in the exercise of due diligence, and not being a passenger or in the employment of the corporation, is lost; "*provided,* that the corporation shall not be so liable for the loss of life by any person while walking or being upon its road contrary to law or the reasonable rules and regulations of the corporation."

CHAPMAN, J.*   1. The defendants contend that the first count in the indictment is bad, because it does not allege that Hapgood was not at the time he lost his life walking or being on the defendant's road contrary to law or the reasonable rules and regulations of the corporation.   The clause of the statute, Gen. Sts. *c.* 63, § 98, on which this objection is founded is contained in a proviso, and not in the enacting part of the section; and upon the authority of *Commonwealth* v. *Hart,* 11 Cush. 130, the allegation was properly omitted.   This being the only objection now insisted upon, and the other objections stated in the motion to quash not appearing to be well founded, the indictment must be held good.

2. Upon a careful consideration of all the evidence as reported, the court cannot see judicially that the evidence was insufficient in law to sustain the verdict.

There was evidence tending to show that the bell was not rung or the whistle sounded, in conformity with *St.* 1862, *c.* 81. That statute requires that the engine shall have a bell of at least thirty-five pounds in weight, and a steam whistle; that the bell shall be rung or the whistle sounded at least eighty rods from the crossing; and the bell shall be rung or the whistle sounded, either one or the other, continuously or alternately until the engine has crossed the way.   The weight of all the evidence on this point is apparently in favor of the defendants, but there was so much evidence against them that the presiding judge properly submitted it to the jury, and if the finding was erroneous, the only remedy of the defendants was by a motion for a new trial.

If the jury were satisfied that the bell was not rung nor the whistle sounded, they would of course find that the defendants' servants were guilty of negligence; and it was for them, and not for the court, to determine the degree of that negligence, in view of all the facts that appeared in evidence Ordinarily they would be justified in finding that such an omission was gross negligence.

---

* HOAR, J. did not sit in this case.

The purpose of ringing the bell and sounding the whistle is to give notice to persons travelling on the highway of the approach of the train. Travellers have a right to presume that this notice will be given, and that the statute will be complied with, and a reliance on this presumption cannot be regarded as carelessness. To what extent it is safe or reasonable to rely upon their ability to hear the bell or the whistle is a question of fact to be submitted to the jury.

If the evidence made it certain that Hapgood or his companion saw the train approaching in season to avoid a collision, and yet persisted in passing just before it, the court might determine that their conduct was careless. For the train has the superior right, and travellers in other vehicles must yield to it, though they are on the highway. This is a necessary rule, resulting from the different species of conveyance used on the railroad and on the highway. The engine is an instrument of such power, and runs with such speed, and the train acquires such momentum, that it cannot be stopped immediately; nor can its speed be checked too suddenly without great danger to the train and to the persons on board. On the other hand, the conveyances used on highways are controlled and stopped with comparative ease.

Or if the evidence made it certain that Hapgood or his companion might have seen the approaching train in season to avoid a collision by the use of ordinary care, the court might determine that they were careless. For it is the duty of travellers to make a reasonable use of their senses, even if the managers of the train neglect to ring the bell or sound the whistle.

But the evidence does not so clearly establish the fact that these persons saw the train or might have seen it in season to avoid the collision, as to authorize the court to interfere. As they approached the crossing from a distance they would be unable to see the train for a considerable part of the way. There were several points where it would have been in view, if it had been in certain positions while they were passing those points. But it does not appear precisely where the train was when they passed those points, so that it is not certain that they

saw it or were careless in not seeing it before they came upon the crossing. Nor does it appear that they heard or were careless in not hearing the ordinary noise made by it, aside from the ringing of the bell or sounding of the whistle. The road-bed appears to have been excavated, so that as they approached the crossing a bank would intervene between them and the train. As they entered the excavation and came near the track the train would be in sight; but the crossing is so nearly at right angles that they must have turned their heads considerably to see it. The question here arose whether they were careless in not turning to see it; and also whether it was an act of carelessness to strike the horse and endeavor to cross before the train, when it was so near to them ; but these were questions of fact which must be decided in view of all the circumstances. The court cannot determine precisely where the train was when they saw it or ought to have seen it, nor precisely how near to the track they then were, nor whether they were so absorbed in conversation as not to notice what they ought to have noticed. The question of their negligence depends not only upon a considerable number of distinct facts, but upon inferences to be drawn from those facts, and thus the whole matter was clearly within the province of the jury.

In all the cases cited by the defendants' counsel in which the court has taken the decision into its own hands, the evidence has been deemed legally insufficient to prove the plaintiff's case, or some essential point in it. In all other cases, questions of fact are within the province of the jury, and in every case the court has carefully abstained from invading their province. Its power is always exercised with a proper regard to the distinction between the province of the court and the province of the jury. In *Toomey* v. *London, &c. Railway*, 3 C. B. (N. S.) 146, which was an action for negligence, Williams, J. remarked, " It is not enough to say there was *some* evidence ; for every person who has had experience in courts of justice knows very well that a case of this sort against a railway company could only be submitted to a jury with one result. A *scintilla* of evidence, or a mere surmise that there may have been negligence on the part

of the defendants clearly would not justify the judge in leaving the case to the jury ; there must be evidence upon which they might reasonably and properly conclude that there was negligence." The same doctrine has been held in this court in *Denny* v. *Williams*, 5 Allen, 1. We trust the rights of companies are safer in the hands of juries in this commonwealth than the learned judge represents them to be in England ; but if it were otherwise, the only power which the court could properly exercise on that account would be the increase of vigilance. If juries are unfaithful, the public must submit to the misfortune or must provide its own remedy. In the present case, however there was more than a mere *scintilla* of evidence against the defendants, and we think the presiding judge could not properly have refused to submit it to the jury.

*Exceptions and motion to quash overruled.*